E-FILED
Tuesday, 05 September, 2017  09:10:23 AM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

KELVIN MERRITT,       )
                      )
    Plaintiff,        )
                      )
    v.                )    15-CV-1159
                      )
DR. OJELADE, et al.,  )
                      )
    Defendants.       )

## OPINION

JAMES E. SHADID, U.S. District Judge.

Plaintiff proceeds pro se from his incarceration in Menard Correctional Center on an Eighth Amendment claim for deliberate indifference to the treatment of a hand fracture he suffered in the Pontiac Correctional center in April 2013.  Summary judgment motions are before the Court, which are granted in part and denied in part for the reasons below.

### Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).   A movant may demonstrate the absence of a material

dispute through specific cites to admissible evidence, or by showing that the nonmovant "cannot produce admissible evidence to support the [material] fact." Fed. R. Civ. P. 56(c)(B). If the movant clears this hurdle, the nonmovant may not simply rest on his or her allegations in the complaint, but instead must point to admissible evidence in the record to show that a genuine dispute exists. Id.; Harvey v. Town of Merrillville, 649 F.3d 526, 529 (7th Cir. 2011). "In a § 1983 case, the plaintiff bears the burden of proof on the constitutional deprivation that underlies the claim, and thus must come forward with sufficient evidence to create genuine issues of material fact to avoid summary judgment." McAllister v. Price, 615 F.3d 877, 881 (7th Cir. 2010).

At the summary judgment stage, the evidence is viewed in the light most favorable to the nonmovant, with material factual disputes resolved in the nonmovant's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A genuine dispute of material fact exists when a reasonable juror could find for the nonmovant. Id. However, only admissible evidence may be considered. Baines v. Walgreen Co., 863 F.3d 656 (7th Cir. 2017)("Evidence offered at summary judgment must be admissible

to the same extent as at trial, . . ."). The portions of Plaintiff's declarations that rely on inadmissible hearsay have not been considered.

## Facts

On April 13, 2017, Plaintiff injured his right hand while exercising in his cell at Pontiac Correctional Center. He was doing triceps dips on a table and he slipped off the table, hitting his hand hard on the floor. (Pl.'s Dep. 6.) Plaintiff was already scheduled to see Physician Assistant Ojelade that day for complaints of body aches. Plaintiff asserts that he told P.A. Ojelade that day of his hand injury and need for x-rays. According to Plaintiff, P.A. Ojelade said that the hand was just swollen without adequately examining the hand, which was handcuffed behind Plaintiff's back. A practice drill code then sounded and the visit was abruptly terminated. (Pl.'s Dep. 12-13.) According to Plaintiff, P.A. Ojelade told Plaintiff he would be rescheduled but he was not. (Pl.'s Dep.) Dr. Ojelade does not address whether Plaintiff mentioned his hand at this visit, and the medical records do not reflect a complaint about Plaintiff's hand.

Over the next three weeks, Plaintiff asserts repeatedly tried to obtain medical attention for his hand by writing notes to Certified Medical Technician (CMT) Chicke and speaking with the Health Care Unit Administrator Teresa Arroyo. According to Plaintiff, Defendant Arroyo told Plaintiff that she would put him in to see Dr. Tilden and that Plaintiff did not need to put in a sick call request. (Pl.'s Dep. 44-45.) Plaintiff's understanding, which appears undisputed, is that the sick call procedure, which can take days, may be bypassed if an inmate needs urgent care.

On or about April 15, 2013, Plaintiff submitted a sick call request to be seen for chronic body aches. According to the medical records, P.A. Ojelade saw Plaintiff on April 17, 2017, for this complaint. No complaint about Plaintiff's hand is documented in the medical record on this date. Plaintiff asserts that this is false. Plaintiff seems to assert that he did tell P.A. Ojelade about his hand, but Plaintiff appears to be referring to the April 13 visit, not the April 17 visit. (Pl.'s Resp. ¶ 15.) P.A. Ojelade's affidavit does not mention the April 17 visit. Defendants also assert that Plaintiff made no complaints about his hand when a transfer summary was

completed on April 25, 2013, but Plaintiff counters, without dispute, that he was not present for the filling out of that form.

By May 8, 2013, Plaintiff realized he was not going to be called back to the doctor for his hand. That day he told CMT Eshleman that his hand was broken. Eshleman told Plaintiff to put in a money voucher for sick call, which Plaintiff did. (Pl.'s Dep. 41.) Plaintiff describes his hand at this point as "something out of the cartoons, you know. It's big and discolorated." (Pl.'s Dep. 43.)

Five days, later, on May 13, 2013, P.A. Ojelade saw Plaintiff and ordered an x-ray. The x-ray, taken the next day (May 14), showed a "comminuted, intra-articular fracture at the base of the 5th metacarpal . . . [and] displacement of the radial fracture fragment." (5/20/13 x-ray report, d/e 92-3, p. 62.) Dr. Tilden obtained approval from his employer, Wexford Health Sources, Inc., to send Plaintiff for an orthopedic consult. Dr. Lowe from OSF Pontiac Orthopedics decided to treat Plaintiff "conservatively in a ulnar gutter type cast." Dr. Lowe also recommended that Plaintiff take Tylenol for pain, not ibuprofren or anti-inflammatories. (5/15/13 progress note, d/e 92-3, p. 14, 21.)

Pursuant to Dr. Lowe's recommendation, Dr. Tilden arranged for Plaintiff to be taken back to the orthopedic clinic for a follow-up on or about May 30, 2013, and also changed Plaintiff's pain medicine from Motrin to Tylenol.  Certified Physician Assistant Chang saw Plaintiff at the clinic and wrote that he believed Plaintiff was healing appropriately.  CPA Chang recommended a follow-up in two weeks to transition Plaintiff out of immobilization and begin range of motion exercises.  Chang reiterated that Plaintiff should receive Tylenol because ibuprofen could potentially deter bone healing.  (6/7/13 progress note, d/e 92-3, pp. 22-24.)   Dr. Tilden followed this recommendation, continuing Plaintiff's Tylenol prescription for 14 days and arranging the follow-up visit.

Plaintiff was taken for his next follow-up appointment on June 13, 2013.  Plaintiff's cast was removed and replaced with a splint that Plaintiff could remove while performing range of motion exercises.  Defendants maintain that no further referrals were recommended by the orthopedic group.  However, Defendants do not mention that CPA Chang recommended "splint until seen by OT.  May remove splint for range of motion exercises as needed.  OT for strengthening, range of motion, & thermoplastic splint." (d/e

92-3, p. 26.) There is no indication that Plaintiff ever saw an occupational therapist or received a thermoplastic splint. Additionally, as Plaintiff points out, there arguably should be a more detailed progress note in the record from this visit as was provided with the other orthopedic visits.

Around June 18, 2013, Plaintiff was transferred to Menard Correctional Center. Before the transfer, Dr. Tilden approved a two-day Motrin prescription for Plaintiff but he scheduled no follow up with the orthopedist. In Dr. Tilden's opinion, based on Dr. Tilden's evaluation of Plaintiff's hand, the purported lack of recommendation for further orthopedic follow-up, and Dr. Tilden's instructions to Plaintiff regarding range of motion exercises, Plaintiff could be managed in the prison and did not need a further orthopedic consult. Dr. Tilden does not address CPA Chang's occupational therapist and thermoplastic splint recommendations.

Once at Menard, according to Plaintiff, he repeatedly asked the doctors at Menard (Dr. Shearing and Dr. Nwaobasi) to be taken back to the orthopedist for the thermoplastic splint and a follow-up visit. Like Dr. Tilden, these doctors do not address CPA Chang's recommendations. Dr. Shearing did, however, prescribe Tylenol

and order an x-ray on June 28, 2013, which showed that the fracture was healing.  (7/2/13 x-ray, d/e 92-3.)  Another x-ray report on July 31, 2013, showed further healing.  (8/1/13 x-ray report, d/e 92-3, p. 70.)  That day, Dr. Nwaobasi applied a "short arm slab" to stabilize the fracture.  Why is not explained.  Plaintiff maintains that his request for replacement of a worn ACE bandage, which held his temporary splint in place, were denied by Dr. Nwaobaisi.

Dr. Nwaobasi maintains that Plaintiff was noncompliant because he kept removing the plaster slab, but Plaintiff counters that removal of the slab was impossible.  An x-ray on September 18, 2013, showed continued healing, though the cast obscured a detailed look.  (9/19/13 x-ray report, d/e 92-3, p. 72.)

On or about October 16, 2013, Dr. Nwaobasi removed the cast with a medical saw.  According to Plaintiff, Plaintiff told Dr. Nwaobasi that Plaintiff's arm and hand were being cut or about to be cut with the saw, but Dr. Nwaobasi persisted.  After removing the cast, Dr. Nwaobasi apologized because he realized he had indeed cut Plaintiff's skin, according to Plaintiff.  (Pl.'s Dep. 28-31.)

Dr. Fuentes, who is not a Defendant, saw Plaintiff on November 6, 2013. According to Dr. Fuentes, Plaintiff had no swelling and good range of motion. Plaintiff disputes this, accusing Dr. Fuentes, Defendants, and others of falsifying many of the medical records in order to cover-up the lack of care or to retaliate against Plaintiff. Dr. Fuentes also reviewed an x-ray from October 2013 that showed that the fracture had healed. (10/18/13 x-ray report, d/e 92-3, p. 74.)

Plaintiff continued to complain about hand pain and continued to ask to see a specialist. On or about December 4, 2013, Nurse Practitioner saw Plaintiff, noting no swelling, no deformity, and good range of motion (another falsification of the records, according to Plaintiff). Dr. Trost, who is not a Defendant, saw Plaintiff on January 8, 2014, also noted full range of motion (yet another falsification of the record, according to Plaintiff).

On January 31, 2014, reinjured his right hand in an altercation. (2/19/14 progress note, d/e 92-2, p. 49.) The treatment of this injury and any further injuries is not a part of this case. Plaintiff's complaint in this case covers only the period from

the date of his injury in April 2013 to the end the year 2013. (Compl., d/e 1.)

## Analysis

Deliberate indifference to an inmate's serious medical needs violates the Eighth Amendment. Townsend v. Cooper, 759 F.3d 678, 689 (7th Cir. 2014). A medical need is considered serious under the Eighth Amendment if a physician has diagnosed the need as requiring treatment, or if the need is so obvious that even a layperson would recognize that treatment was needed. Chapman v. Keltner, 241 F.3d 842, 845 (7th Cir. 2001).

Defendants focus on deliberate indifference. Deliberate indifference is the conscious disregard of a known and substantial risk of serious harm to an inmate's health. Townsend, 759 F.3d at 689; Rice ex rel. Rice v. Correctional Medical Serv., 675 F.3d 650, 665 (7th Cir. 2012)("An official is deliberately indifferent when he is subjectively aware of the condition or danger complained of, but consciously disregards it."). An inference of deliberate indifference arises "'if the decision by the professional is such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually

did not base the decision on such a judgment.'" Roe v. Elyea, 631 F.3d 843, 857 (7th Cir. 2011)(*quoting* Sain v. Wood, 512 F.3d 886, 894-95 (7th Cir. 2009). However, "[a] medical professional is entitled to deference in treatment decisions unless no minimally competent professional would have so responded under those circumstances." Sain, 512 F.3d at 894-95. Malpractice is not deliberate indifference, nor are professional differences of opinion. Petties, 836 F.3d at 729 ("evidence that some medical professionals would have chosen a different course of treatment is insufficient to make out a constitutional claim.").

Credibility determinations are not appropriate at the summary judgment stage. Accepting Plaintiff's version as true, an inference of deliberate indifference arises against Defendants Ojelade, Arroyo, Chicke, and Eshleman for the delay in providing medical attention for Plaintiff's broken hand after he injured it. Four weeks passed from the date of the injury to the x-ray and orthopedic consultation. If Plaintiff is believed, he told Defendant Ojelade about the injury the day it occurred, and Ojelade discounted the severity of the injury but said he would reschedule Plaintiff's appointment. In the following weeks, Defendants Arroyo and Chicke purportedly

continued to assure Plaintiff that he would be seen without putting in a sick call pass, and then later Defendant Chicke required Plaintiff to put in for sick call despite an obviously injured hand, delaying for five more days the medical attention Plaintiff needed. Plaintiff's fracture did heal, which reduces his damages, but the delay in medical attention for a serious injury gives rise to an inference of deliberate indifference if the delay exacerbates an inmate's pain and suffering for no reason. Perez v. Fenoglio, 792 F.3d 768, 778 (7th Cir. 2015)(reversing dismissal of claim where prisoner alleged delay in meaningful treatment for his hand injury, even though inmate did receive some medical attention); Grieveson v. Anderson, 538 F.3d 763, 779 (7th Cir. 2008)(summary judgment reversed on one and one-half day delay in obtaining medical care for the prisoner's broken nose).

    The Court also cannot rule out a deliberate indifference claim against the doctors who purportedly refused to send Plaintiff for a thermoplastic splint, occupational therapy, and, possibly, a follow up with an orthopedist. Refusing to follow a specialist's recommendation may allow an inference of deliberate indifference if that decision is not based on accepted professional judgment. Perez

v. Fenoglio, 792 F.3d at 778. The prison doctors have the burden at this stage to demonstrate that no disputed fact exists for trial, but they do not address or even acknowledge CNP Chang's recommendations for occupational therapy and a thermoplastic splint. The damages from the refusal to follow these recommendations may be small, since Plaintiff's injury healed and, if Defendants are believed, Plaintiff's full range of motion was restored, but what a claim is worth does not determine whether a claim exists. Plaintiff's claim that Defendants Tilden, Nwaobasi, and Shearing were deliberately indifferent by refusing to provide Plaintiff with a thermoplastic splint, occupational therapy, and follow up with an orthopedist survives summary judgment. Additionally, the Court cannot rule out an inference of deliberate indifference on Plaintiff's claim that Dr. Nwaobasi cut Plaintiff's arm and hand when he sawed through Plaintiff's cast, despite Plaintiff's purported pleas, and refused to prescribe a new ace bandage to hold Plaintiff's temporary splint in place.

No inference of deliberate indifference to Plaintiff's hand injury arises against the other Defendants—Walter, Hamby, Crane, Moldenhauer, Stefani, or Wexford Health Sources, Inc. Plaintiff

alleges various sarcastic attitudes, "toying" with Plaintiff, some delays in responding to his complaints of pain, and charging co-pays for medical care, but Plaintiff offers no evidence against these individual Defendants that they were aware of much less disregarded any substantial risk of harm to Plaintiff. Plaintiff's allegation that all the individual Defendants conspired to falsify the entries in Plaintiff's medical records remains supported only by speculation. Similarly, Plaintiff's allegations that a practice or policy of Wexford played a part in any adverse action taken by Defendants remains unsupported by admissible evidence.

**IT IS THEREFORE ORDERED:**

**1. The motion for summary judgment by Defendants Arroyo, et al., is granted in part and denied in part. (d/e 63.) Summary judgment is denied to Defendants Arroyo, Chicke, and Eshleman on Plaintiff's claim arising from the purported delay in providing medical attention for Plaintiff's fractured hand. Summary judgment is otherwise granted.**

**2. The motion for summary judgment by Defendants Ojelade, et al., is granted in part and denied in part. (d/e 82.) Summary judgment is denied to Defendant Ojelade on Plaintiff's claim arising from the purported delay in providing medical attention for Plaintiff's fractured hand. Summary judgment is denied to Defendants Tilden, Shearing, and Nwaobasi on Plaintiff's claim arising from the alleged refusal to provide a thermoplastic splint, occupational therapy, and a**

follow up visit with an orthopedist.  Summary judgment is otherwise granted.

3.  The claims remaining for trial are:  (1) Defendants Ojelade, Arroyo, Chicke, and Eshleman were deliberately indifferent by delaying or denying Plaintiff medical attention for his fractured hand; and (2)  Defendants Tilden, Shearing, and Nwaobasi were deliberately indifferent by refusing to provide a thermoplastic splint, occupational therapy, and a follow up visit with an orthopedist.

4.  Defendants Hamby, Modneauer, Wexford, Crane, Stefani, and Walter are terminated.

5.  This case is referred to the Magistrate Judge for a settlement conference.  A final pretrial and jury trial will be scheduled if no settlement is reached.

ENTERED: 9/5/2017

FOR THE COURT:

                              s/James E. Shadid
                              JAMES E. SHADID
                     UNITED STATES DISTRICT JUDGE